# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| CEDRIC BROWN, SR., )<br>Plaintiff, *pro se*, )<br> )<br>v. )<br> )<br>CAROLYN W. COLVIN, Acting )<br>Commissioner of Social Security, )<br>Defendant. ) | Cause No.: 2:12-CV-344-PRC |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by *pro se* Plaintiff Cedric Brown on August 29, 2013, and Plaintiff's Social Security Opening Brief [DE 12], filed on December 28, 2012. Brown requests that the November 22, 2010 decision of the Administrative Law Judge (ALJ) denying his claims for disability insurance benefits (DIB) and supplemental security income (SSI) be reversed or remanded for further proceedings. The Commissioner filed a response on February 11, 2013, and Brown filed a reply on February 25, 2013. For the following reasons the Court denies Plaintiff Brown's Complaint.

## I. Procedural Background

Brown filed applications for DIB and SSI on June 30, 2008, and June 28, 2008, respectively. He alleged a disability onset date of May 25, 2005, resulting from back pain, neck problems, hyperthyroidism, and depression.[1]

On November 5, 2010, ALJ Roxanne Kelsey held a video hearing at which Brown (who was then represented by counsel) and a vocational expert testified. On November 22, 2010, the ALJ

---

[1] Brown was disabled from May 25, 2005, to November 2006. The ALJ's decision addressed whether Brown was disabled from December 2006 to her decision.

made the following findings under the required five-step analysis:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since May 2005 (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, a thyroid condition, and hypertension (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CF Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CF 404.1567(b) and 416.976(b) except for work that requires climbing of ladders, ropes or scaffolds, or more than occasional climbing of ramps/stairs, balancing, stooping, kneeling, crouching, or crawling.

6. The claimant is capable of performing past relevant work as a purchasing agent or as a grinding operator as he performed the work. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2006, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(AR 12–20).

Brown sought review with the Appeals Counsel, which denied his request, leaving the ALJ's decision as the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Factual Background

### A. Vocational Evidence

Plaintiff Cedric Brown Sr. was forty-seven years old on the date of the ALJ's decision. He had a high school education with one year of college. His past relevant work history was as a purchasing agent (light exertion, skilled), a shipping clerk (medium exertion, skilled), and a forklift operator and grinder (both semi-skilled—the operator job was medium exertion, the grinder job was light exertion).

### B. Relevant Medical Evidence

From October 2007 through October 2010, Brown was treated by Drs. Janet Seabrook, Thomas Leanard, and Ugochi Okoro at the Gary Community Health Center (later known as Community Healthnet, Inc.) for medication management of his routine health conditions, including back pain, hypertension, and a thyroid condition.

In October 2007, Brown asked Dr. Leanard to perform a physical exam in support of his application for SSI. The findings of that exam were minimal and most of the handwriting is illegible. At that time, Dr. Leanard also wrote an order for Brown to undergo lumbosacral spine x-rays. These showed mild degenerative disc disease in his lumbar area (L3–L4) and degenerative disc disease in his lower thoracic area (T11–T12).

Later that same month, Dr. Leanard completed a form in support of Brown's disability application. Dr. Leanard noted that he treated Brown for hypothyroidism, hypertension, back pain, and mild depression with medications. Dr. Leanard noted that Brown was in constant pain but that his limitations were not enough to prevent him from participating in gainful employment. Dr. Leanard further checked off that Brown had moderate limitations with walking, reaching above his

3

shoulders, being around machinery, driving, normal housework, and caring for his personal needs. Dr. Leanard further noted that Brown had significant limitations with sitting, standing, lifting, grasping/manipulation, pushing/pulling, bending, squatting, crawling, climbing, repetitive leg movements, exposure to temperature/humidity changes, and exposure to dust/fumes/gases. To support this, Dr. Leanard noted that Brown had a limp when his back was particularly sore and that he had back pain bilaterally with muscle spasm, and decreased range of motion with bending and twisting.

In August 2008, Brown reported to Dr. Raymond Bucur, a consultative psychological examiner, that he made his own bed and took out the trash, but that his mother and sister did all the other household chores.

Then, in September 2008, Brown underwent a consultative physical examination performed by Dr. Teofilo Bautista at the request of the state agency. Dr. Bautista found that Brown complained of having a stiff neck and that he was unable to perform neck range of motion exercises. Brown likewise refused to do other range of motion testing in light of his low back pain. Upon palpation, Dr. Bautista noted Brown's complaints of pain and tenderness of his lumbosacral area. Brown also reported he was unable to do hip range of motion testing because of his hip and low back pain. While he complained of muscular aches and pains in both his legs, he reported neither pain nor tenderness of either knee upon testing. He had a normal gait. He did not limp or need an assistive device. He could do tandem, heel, and toe walking slowly.

Dr. Bautista rated Brown's muscle tone and strength in his lower extremities as a 5/5. Regarding his upper extremities, Dr. Bautista found that he had good grip (again, 5/5) in both hands and could button, zip, and pick up coins. Brown had good range of motion in his shoulders and

4

wrists. Dr. Bautista's impressions were that Brown most likely had chronic neck pain because of degenerative disc disease in his neck. Similarly, he found that it was likely that his low back pain was the result of mild degenerative disc disease in his lumbar region (L3–L4) and degenerative disc disease in his lower thoracic region (T11–T12).

Later in September 2008, Brown went to a local emergency room, complaining of chest pain. The emergency room admission form notes hypertension. Brown underwent treatment and diagnostic testing, including a cardiogram that showed normal results with non-specific T-wave changes.

In January 2009, Dr. Seabrook's physician assistant (PA Richards) filled in a form to exempt Brown from working while he received financial assistance from the Indiana township where he lived. On the form, the PA noted Brown's diagnoses of chronic low back pain and hypothyroidism, explaining that Brown could not work because he was unable to engage in "lifting, twisting at waist, stairclimbing, squatting, [or] lifting greater than 15 pounds." (AR 319). PA Richards did not refer to any clinical or diagnostic findings to support this. A month later, in February 2009, PA Richards found Brown to have good strength and reflexes upon exam.

In October 2008, Richard Wenzler, M.D. (a state agency reviewing physician), reviewed the record and concluded that Brown was capable of performing a range of light-level work (defined as occasionally lifting and carrying up to twenty pounds, frequently lifting and carrying up to ten pounds, and standing, sitting, and walking about six hours out of an eight-hour work day) with some postural limitations. Dr. Wenzler noted Brown's x-ray findings of mild degenerative disc disease and his use of Tylenol to treat his pain. Dr. Wenzler also noted that, while Brown has chronic lower back pain, Dr. Bautista's exam did not support Brown's claims about the severity or duration of that

5

pain. Dr. Wenzler also disagreed with Dr. Leanard's opinion that Brown was significantly impaired or disabled, stating that the medical evidence of record did not support such a conclusion. Another state agency reviewing physician, Dr. M. Brill, reviewed the record in January 2009 and concurred with Dr. Wenzler's assessment.

In January 2010, Brown reported to PA Richards that he could not perform physical labor because of his back pain. In February 2010, Dr. Okoro (also from Community Healthnet) drafted a letter to the Brown County, Indiana Child Support Agency in which he noted that Brown was unable to work because of his hypertension, hypothyroidism, chronic back pain, and heart-related recurrent chest pain. Dr. Okoro did not cite any clinical or diagnostic findings to support his disability opinion.

Also in February 2010, Brown again went to his local emergency room, complaining of chest pain for the past week. His diagnosis of hypertension was noted, and he underwent treatment and diagnostic testing. The tests did not show any acute cardiopulmonary findings. He was treated and released.

In August 2010, Brown was observed to have no edema in his extremities, symmetric pulses, good sensation, and good range of motion with musculoskeletal testing. In September 2010, Brown was noted to have negative straight leg raising, bilaterally, and no edema in his lower extremities.

Later in September 2010, Dr. Seabrook co-signed a disability form that her family practice nurse practitioner, Valerie Robinson-Royal, N.P., had completed for Brown. On this form, Ms. Robinson-Royal concluded that Brown could lift less than ten pounds occasionally; lift less that five pounds frequently; stand/walk for a maximum of a half-an-hour per day; sit for no more than a half-an-hour per day; and could occasionally balance, but never climb, stoop, crouch, kneel, crawl, bend,

6

or twist. For medical findings in support of her opinion, she noted lower back pain and referenced Brown's 2007 lumbar x-ray results and that he had positive bilateral straight leg raising at thirty degrees. She further opined that his condition made him unable to climb and affected his reaching, handling, and seeing. When asked if Brown needed to rest during an eight-hour period, Ms. Robinson-Royal noted that Brown stated he needed to lie down more than two hours. Ms. Robinson-Royal indicated that lower back pain aggravated Brown's sitting, standing, walking, bending, and kneeling. Ms. Robinson-Royal wrote at the end of the form that she had completed the form with Brown.

### III. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning

of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734–35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### IV. Disability Standard

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as

8

an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699 –700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's residual

functional capacity (RFC). The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## V. Analysis

There are two issues in this case. The first is whether there is substantial evidence in the record to support the ALJ's decision to give more weight to the opinions of the state's doctors than to Brown's treating physicians regarding his ability to do a range of light-level work. The second issue is whether the additional medical evidence Brown attached to his Complaint warrants remand. The Court considers each in turn.

### A. Weight Given to Physicians' Opinions

The disagreement between the doctors is quite simple: Brown's treating physicians stated that he cannot work because of the pain he suffers from degenerative disc disease in his lower back, but the state's physicians think that Brown's medical problems, though real, do not add up to the physical incapacity Brown claims.

ALJs must give the medical opinion of a treating doctor controlling weight so long as the doctor's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and it is "not inconsistent" with the other substantial evidence in the case record. 20

C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2).[2] When an ALJ does not give controlling weight to the treating physicians' opinions, the analysis must apply the factors listed in (c)(2)(i), (c)(2)(ii), and (c)(3)–(c)(6). C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2); *See also Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008); *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006); SSR 96-8p; SSR 96-2p, 1996 WL 374188 (Jul. 2, 1996). Two are important here: supportability and consistency. 20 C.F.R. §§ 404.1527(c)(3)–(4), 416.927(c)(3)–(4).

Here, as was laid out in the factual background section above, and summarized by the ALJ, Drs. Leanard, Seabrook, and Okoro opined on various occasions that Brown was unable to do any kind of labor. They supported these opinions with two pieces of objective medical evidence: (1) a series of x-rays of Brown's back that showed he has degenerative disc disease in his lower thoracic region (T11–T12) and mild degenerative disc disease in his lumbar region (L3–L4); and (2) an isolated finding of bilaterally positive straight leg raising in October 2010 (in previous months he had negative straight leg raising findings).

At the consultive state-requested examination, Dr. Bautista found, among other things, that Brown had full muscle tone and strength in both his upper and lower extremities, a normal gait (and could do tandem, heal, and toe walking), good sensation, good knee reflexes, intact ankle reflexes, and full grip strength in both his hands. The reviewing physicians (Drs. Wentzler and Brill) concluded that the x-rays, Dr. Baustista's observations, and that Brown took Tylenol supported Brown's claims of chronic lower back pain but did not support his claims about the severity or

---

[2] Medical opinion does not include statements by a doctor that someone is "disabled," "cannot perform a past job," or is "unable to work." 20 C.F.R. § 404.1527. These are legal, not medical, conclusions and belong to the Commissioner to decide. *Id.*

duration of that pain.[3]

This, along with the paucity of clinical findings supporting the treating physicians' opinions, led the ALJ to conclude that there was "little in the way of diagnostic evidence and of objective clinical signs and findings that would support a finding of disability." (AR 14). In other words, the ALJ concluded from these facts that the treating doctors' opinion that Brown's back problems kept him from working were not adequately supported.

The ALJ concluded, based on the lack of medical evidence for limitations and the reviewing physicians' opinions, that Brown was not disabled but could return to one of his previous lines of work or else find another type of light work that did not require bending, twisting, climbing, crawling, or being around moving mechanical parts. At the hearing, the Vocational Expert identified thousands of jobs accommodating these restrictions. Accordingly, "a reasonable mind might accept" these reasons "as adequate to support" the conclusion that Brown's limitations are less than those claimed by him and his treating physicians. *Schmidt*, 395 F.3d at 744 (quoting *Gudgel*, 345 F.3d at 470). The decision to give more weight to the reviewing physicians' opinions is thus supported by substantial evidence, and the Court hereby affirms it.

### B. Additional Evidence in Brown's Complaint

Brown contends that recent medical findings show severe changes in his degenerative disc disease and that his disabilities continue to the present day. To support this he brings a number of medical records including a May 31, 2012, letter from Dr. Seabrook's nurse practitioner that indicates that Brown's spinal changes have worsened since 2007 and that a March 2012 cervical

---

[3] An ALJ may discount the medical opinion of a treating physician if, as here, it is inconsistent with the opinion of a consulting physician, as long as the ALJ gives a good reason. *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004).

MRI shows disc protrusion and foraminal narrowing.

When considering new evidence that was not presented to the ALJ, the standard for remand is whether it is material. 42 U.S.C. § 405(g). Evidence is material if there is a reasonable probability that the ALJ would have reached a different conclusion regarding the disability claim if she were presented with the additional evidence. *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997) (citing *Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). Importantly, the relevant evidence when reviewing the ALJ's decision concerns a plaintiff's condition *only* for the time period considered by the ALJ. *See Eichstadt v. Astrue*, 534 F.3d 663, 666 (7th Cir. 2008). Here that is from November 1, 2006, through the ALJ's November 22, 2010 decision.

All the evidence Brown presents in his complaint relates to his current health well after the ALJ's decision. *See id.* (while evidence stemming from after the relevant period under consideration may suggest the claimant is currently disabled, it provided no support for the contention that the claimant was disabled at any time during the relevant period).

Accordingly, if his condition has in fact worsened to the point that he is now disabled, Brown's remedy (if he meets the other requirements, of course) is to file a new claim for disability benefits. *See Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008) ("If Mr. Getch has developed additional impairments, or his impairments have worsened, since his first application for benefits, he may submit a new application."); *see also Godsey v. Bowen*, 832 F.2d 443 (7th Cir. 1987) (explaining that while the new medical evidence showed that the claimant's condition had deteriorated in the years since the administrative hearing, it did not show that the claimant's condition was disabling during the relevant period and, therefore, the proper remedy for a claimant

13

in such a situation is to file a new application for benefits).

The additional evidence attached to Brown's complaint accordingly does not warrant remand. Finally, the Court does not consider the evidence attached to Brown's reply brief. And even if this Court did, that evidence is not material for the same reasons the evidence attached to his complaint is not.

## VI. Conclusion

Based on the foregoing, the Court hereby **DENIES** the relief sought in Plaintiff's Brief [DE 12] and **AFFIRMS** the Commissioner of Social Security's final decision.

So ORDERED this 30th day of September, 2013.

                                        s/ Paul R. Cherry
                                        MAGISTRATE JUDGE PAUL R. CHERRY
                                        UNITED STATES DISTRICT COURT

cc:    All counsel of record
       Plaintiff, *pro se*